UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

MELANIE HARRIS,

                     **Plaintiff,**

         – against –

OSCAR DE LA RENTA, LLC,

                    **Defendant.**

———————————————————————————

20-cv-9235 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Melanie Harris, proceeding pro se, brought this action against her former employer, Oscar De La Renta, LLC ("ODLR"), alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-101 et seq. ("NYCHRL").

The defendant moves to dismiss the plaintiff's claims based on the election of remedies doctrine, the applicable statutes of limitations, and the plaintiff's failure to state a claim. For the reasons that follow, the defendant's motion is **granted in part** and **denied in part.**

I.

The following facts are taken from the plaintiff's Second Amended Complaint (the "SAC"), ECF No. 7, and are accepted as true for the purposes of this motion. Because the plaintiff is

1

pro se, the Court also considers the factual allegations made in the plaintiff's opposition papers. Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013).[1] The Court also considers the New York State Division of Human Rights ("NYSDHR") Determination and Order that followed its investigation into the plaintiff's claims against ODLR, see ECF No. 26-1 ("NYSDHR Determination and Order"), as a document that the plaintiff relied on in bringing suit and that is either in the plaintiff's possession or that the plaintiff knew of when bringing suit, see Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

The plaintiff, Melanie Harris, an African American, began working for ODLR as a patternmaker in December 2013, and she was formally hired by the company in July 2014. SAC ¶¶ 1-3. The plaintiff claims that she was the only African American patternmaker at the company. Id. ¶ 1.

The plaintiff claims that during her employment, she was "the most able patternmaker" at ODLR. Id. ¶ 8. Despite this, the plaintiff claims that ODLR denied her certain benefits, such as medical insurance and paid time off, even though ODLR's other patternmaker, Genevieve, who was white, was given "full benefits." Id. ¶¶ 10-11. The plaintiff also claims that she was sometimes denied pay, while other employees were paid. Id. ¶ 10.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

The plaintiff claims that Genevieve told her that there were no other African American patternmakers at ODLR "because the company dislikes people like [the plaintiff] and they only like Europeans." Id. ¶ 14. In August 2014, Genevieve was promoted to manager, and the plaintiff became ODLR's only patternmaker. Id. ¶ 12.

The plaintiff claims that she had various negative interactions with Genevieve during 2014 and 2015. See Pl.'s Opp. ("Opp.") 5-11, ECF No. 32. For example, the plaintiff claims that Genevieve screamed at the plaintiff's young son, who had accompanied the plaintiff to work on the weekend at Genevieve's request, id. at 5, and that Genevieve took one of the plaintiff's dresses off a mannequin before it was ready, gave the mannequin to another employee, and then reprimanded the plaintiff for not having finished the dress. Id. at 5-6. The plaintiff also claims that Genevieve forced the plaintiff to work late nights, id. at 7, and that the plaintiff was unfairly denied vacation time to prepare for her custody trial, while Genevieve was permitted to go to Paris. Id. at 11.

In February 2015, the plaintiff quit her job at ODLR because she "could not take the discrimination and unequal treatment anymore." SAC ¶ 16. She claims that, following her departure, ODLR "actively prevented [her] from procuring a

subsequent job by denying that [she] had ever worked for Oscar."
Opp. 3.

The plaintiff claims that she reapplied for a position with
ODLR around November 2018. Id. at 17–18. ODLR instead hired two
other women, "neither of whom [were] Black." Id. at 18.

Around January 31, 2019, the plaintiff was asked to return
to ODLR as a sample maker to help prepare for a fashion show
that was to be held in two weeks' time. SAC ¶¶ 17–18. The
plaintiff claims that Cerise, the new hiring manager at ODLR,
led the plaintiff to believe that she would be "officially hired
after the show as a patternmaker." Id. ¶ 18. Cerise was
allegedly "impressed to see that the cutters and sample makers
were very happy about [the plaintiff] coming back." Id. Cerise
was also allegedly impressed that the plaintiff had been the
sole patternmaker for the company between October 2014 and
February 2015. Id. The plaintiff claims that she only agreed to
return as a sample maker because her discussions with Cerise led
the plaintiff to believe that the plaintiff "would be rehired
after the show as a patternmaker." Id. ¶¶ 18–19.

The plaintiff claims that her first day back at ODLR "went
very well." Id. ¶ 23. However, on February 2, 2019 — one day
after her return — the plaintiff claims that Cerise told her
that the plaintiff was not going to be able to "finish the [two]
weeks that were promised," and that the plaintiff would not be

hired for the patternmaker position. Opp. 2. Cerise told the
plaintiff that she was sorry, but her hands were "tied." Id.
Apparently, "the decision came directly from Fernando Garcia,"
id., the Creative Director of the company. SAC ¶ 26. While Mr.
Garcia was not directly in charge of the plaintiff's hiring,
according to the plaintiff, Mr. Garcia "did not want [the
plaintiff] there because of his dislike of African-Americans."
Id.

    The plaintiff claims that Alexander Bolen, the Chief
Executive Officer of ODLR, "is a racist and [an] abuser" who
"hates women and Black people." Opp. 13. She further alleges
that "racial inequality is woven into the fabric at Oscar de la
Renta by Alexander Bolen and Fernando Garcia." Id.

    On August 21, 2019, the plaintiff filed a charge of
discrimination against ODLR with the NYSDHR. See NYSDHR
Determination and Order. The charge was dismissed on March 6,
2020. Id. On October 30, 2020, the plaintiff filed this action.
ECF No. 2. On January 29, 2021, after the Court ordered the
plaintiff to amend her complaint to comply with Court rules, the
plaintiff filed an amended complaint. See ECF Nos. 5-6. On
February 8, 2021, the plaintiff filed the SAC, ECF No. 7, and,
on April 16, 2021, the defendant filed this motion to dismiss,
ECF No. 24.

## II.

### A.

While the defendant did not specifically move to dismiss the plaintiff's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the defendant raises a jurisdictional argument in arguing that the election of remedies doctrine bars the plaintiff's nonfederal claims. See Moodie v. Fed. Rsrv. Bank of N.Y., 58 F.3d 879, 882 (2d Cir. 1995). Because the Court has an independent duty to assure that a basis for its jurisdiction exists in any event, see, e.g., FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990), the Court considers this argument through the lens of Federal Rule of Civil Procedure 12(b)(1).

The Court must dismiss a claim for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering whether the Court's jurisdiction is proper, the Court "may refer to evidence outside the pleadings." Id. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. While the Court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest, . . . jurisdictional requirements are not relaxed based

6

on a litigant's pro se status." Saudagar v. Walgreens Co., No.
18-cv-437, 2019 WL 498349, at *6 (S.D.N.Y. Feb. 8, 2019).

**B.**

The plaintiff in this case brings claims pursuant to Title
VII, the NYSHRL, and the NYCHRL. The Court has subject matter
jurisdiction over the plaintiff's Title VII claims because
claims under Title VII necessarily arise under federal law. See
Fort Bend Cnty. v. Davis, 139 S. Ct. 1843, 1850 (2019). However,
the Court lacks subject matter jurisdiction over the plaintiff's
NYSHRL and NYCHRL claims.

Under the election of remedies doctrine, a complainant
seeking to bring claims pursuant to the NYSHRL or the NYCHRL has
two options: (1) the plaintiff may seek administrative review
through the NYSDHR, or (2) the plaintiff may seek judicial
review in state or federal court. York v. Ass'n of Bar of City
of N.Y., 286 F.3d 122, 127 (2d Cir. 2002). These options are
mutually exclusive. Id. Accordingly, once a complainant elects
the administrative forum by filing a complaint with the NYSDHR,
claims for a violation of the NYSHRL or the NYCHRL "may not be
brought again as a plenary action in another court." Id. A
complainant who elects the administrative forum may "appeal only
to the Supreme Court of [the] State of New York." Id.

In this case, the plaintiff filed an employment
discrimination claim with the NYSDHR on August 21, 2019. Before

7

the NYSDHR, the plaintiff argued that ODLR had discriminated against her in violation of the NYSHRL because of her race/color and familial status, basing her claims on the alleged unfair treatment that she endured while employed at ODLR during 2014 and 2015, as well as Mr. Garcia's request that the plaintiff not be employed by ODLR after the plaintiff's one-day return in February 2019. See NYSDHR Determination and Order. These are substantially the same claims that the plaintiff brings in this action. Accordingly, the election of remedies doctrine divests this Court of jurisdiction over the plaintiff's claims pursuant to the NYSHRL and the NYCHRL. See Williams v. City of New York, 916 F. Supp. 2d 517, 521-22 (S.D.N.Y. 2013). Accordingly, the defendant's motion to dismiss these claims is **granted.**

### III.

### A.

The Court therefore proceeds to the merits of only the plaintiff's Title VII claims. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial

8

plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Because the plaintiff proceeds pro se, the Court construes her pleadings liberally and interprets them to raise the strongest arguments they suggest. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

**B.**

The plaintiff's SAC alleges three claims under Title VII: (1) the defendant provided the plaintiff with terms and conditions of employment different from those of similar employees during her initial employment in 2014-2015; (2) the defendant harassed the plaintiff or created a hostile work environment during her employment in 2014-2015; and (3) the defendant did not hire the plaintiff in February 2019. The plaintiff claims that she was subject to these adverse actions because of her race.

In her opposition papers, the plaintiff appears to bring an additional claim under Title VII based on the defendant's failure to hire her around November 2018, but the Court does not consider this claim. While it is appropriate for the Court to

consider new factual allegations made in a pro se plaintiff's opposition papers — and the Court does so here — a pro se plaintiff may not raise new causes of action in an opposition brief. See Shah v. Helen Hayes Hosp., 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); Davila v. Lang, 343 F. Supp. 3d 254, 267-68 (S.D.N.Y. 2018) (collecting cases). The SAC does not contain any allegations about the plaintiff's attempt to return to ODLR in November 2018 or otherwise hint at any failure-to-hire claim arising from that time period. Accordingly, this claim cannot be said to be encompassed within the SAC, and the Court only considers the three claims made in the SAC. See Mathie v. Goord, 267 F. App'x 13, 14 (2d Cir. 2008). Of these claims, only the plaintiff's February 2019 failure-to-hire claim survives.

### 1. 2014-2015 Claims

The plaintiff's two claims arising out of her 2014-2015 employment are time-barred. Under Title VII, before bringing a claim in federal court, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") "within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." See Van Zant v. KLM Royal Dutch

Airlines, 80 F.3d 708, 712 (2d Cir. 1996) (citing 42 U.S.C. §
2000e-5(e)). Title VII claims are barred by a failure to file a
timely charge. See id. A complaint filed with the NYSDHR is
considered to be cross-filed with the EEOC, and therefore the
date of filing with the NYSDHR is the operative date for the
purposes of calculating the statute of limitations. Morales v.
City of N.Y. Dep't of Juv. Just., No. 10-cv-829, 2012 WL 180879,
at *4 (S.D.N.Y. Jan. 23, 2012). While the statute of limitations
is "an affirmative defense that a defendant must plead and
prove[,] . . . a defendant may raise an affirmative defense in a
pre-answer Rule 12(b)(6) motion if the defense appears on the
face of the complaint." Staehr v. Hartford Fin. Servs. Grp.,
Inc., 547 F.3d 406, 425 (2d Cir. 2008).

    In this case, the plaintiff filed a charge with the NYSDHR
on August 21, 2019. While the plaintiff does not provide
specific dates for the majority of her allegations stemming from
her 2014-2015 employment, it is plain on the face of the
complaint that they are time-barred because they occurred well
over 300 days before August 21, 2019.

    As the defendant rightly points out, the "continuing
violation doctrine" cannot salvage the plaintiff's untimely
claims. See Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135,
155-56 (2d Cir. 2012). The continuing violation doctrine does
not apply to discrete discriminatory acts that are otherwise

11

time-barred, but can apply to a claim for a hostile work
environment which is a continuing violation. Nat'l R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002). Taking the
plaintiff's claims as true, the plaintiff experienced two
separable sets of adverse employment actions: first, in 2014–
2015, she was harassed or subject to a hostile work environment
and/or was subject to different terms and conditions of her
employment on account of her race; second, in February 2019, she
was denied employment because of her race. The years-long break
between the two sets of acts breaks "any connection" between the
plaintiff's prior experiences with ODLR and her recent efforts
to find employment with the company, see Cruz v. City of New
York, No. 21-cv-1999, 2021 WL 5605139, at *5 (S.D.N.Y. Nov. 30,
2021), belying any claimed continuing violation. Additionally,
the discrimination allegedly suffered by the plaintiff in 2014–
2015 is "different in character" from the 2019 failure to hire.
See Brown v. Castleton State Coll., 663 F. Supp. 2d 392, 401 (D.
Vt. 2009). The continuing violation doctrine is therefore
inapplicable to the plaintiff's claims arising from her 2014–
2015 employment, and the defendant's motion to dismiss these
claims is **granted**.

### 2. 2019 Claim

The plaintiff's 2019 failure-to-hire claim is timely and,
liberally construed, suffices to state a claim at the motion-to-

dismiss stage. To establish a prima facie showing of failure to hire under Title VII, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009). There must also be "proof that the plaintiff was rejected under circumstances which give rise to an inference of unlawful discrimination." Id. However, a plaintiff is not required to plead a prima facie case to defeat a motion to dismiss. See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015). To survive a motion to dismiss, a plaintiff alleging discrimination need only assert sufficient nonconclusory factual matter to "nudge" her claims across the line from conceivable to plausible. Id. This is a "minimal" burden, because there is "rarely . . . direct, smoking gun, evidence of discrimination," and therefore a plaintiff "usually must rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." Id. at 86.

In this case, the plaintiff states a claim for failure to hire. The defendant does not dispute that the plaintiff is a member of a protected class, that she was qualified to be a

13

patternmaker, or that the plaintiff was rejected for a position with ODLR. Instead, the defendant argues that the plaintiff's claim should be dismissed because (1) the plaintiff fails to allege that she applied for any open positions or that she was promised a position with ODLR, and (2) the plaintiff fails to demonstrate that she was denied employment in circumstances giving rise to an inference of discrimination. Construing the facts in the light most favorable to the plaintiff, however, the plaintiff has adequately pleaded both elements.

First, the plaintiff has adequately pleaded that the defendant "openly entertained" her expressions of interest in a full-time patternmaker role, and "induced her into believing that she had a realistic chance of obtaining the position, despite never formally posting it," and this is sufficient to satisfy the "application for an open position" prong. See Hughes v. Twenty-First Century Fox, Inc., 304 F. Supp. 3d 429, 446 (S.D.N.Y. 2018). Indeed, the plaintiff claims that she accepted a two-week employment with ODLR after being told by Cerise, the hiring manager, that the plaintiff would be hired to fill a patternmaker role once those two weeks elapsed. Her allegations suggest that, while the plaintiff may not have submitted a formal application for an open position, the plaintiff attempted to apply for a role through informal channels, and the defendant "induced [the plaintiff] into believing that she had a realistic

14

chance of obtaining the position." Id. This is sufficient,
especially where, as here, the defendant-employer appears to
have "used the lure of a full-time [position] as a carrot and a
stick to secure" something that they want from the plaintiff —
here, the plaintiff's aid in advance of the fashion show. See
id. In such a situation, it would be unreasonable to allow the
defendant to end-run the plaintiff's failure-to-hire claim by
claiming that no formal application was made. See id.

Second, the plaintiff has sufficiently alleged that her
denial of employment occurred in circumstances that raise a
minimal inference of discrimination. The plaintiff claims that
Mr. Garcia, a person with supervisory duties in the company and
over the plaintiff, told the hiring manager that the hiring
manager could not hire the plaintiff because Mr. Garcia does not
like African Americans. The plaintiff also alleges that she was
the only African American patternmaker at the company and that
the company did not hire African Americans. These allegations —
together with the plaintiff's other, time-barred claims of
discrimination, which "shed[] light on [the defendant's]
motivation and thus bolster [the plaintiff's] claim that [the
defendant] treated [her] differently because of [her]
ethnicity," see Vega, 801 F.3d at 88 — suffice to raise a
minimal inference of discrimination, see Leibowitz v. Cornell
Univ., 584 F.3d 487, 502 (2d Cir. 2009) (noting that an

inference of discrimination may arise from such circumstances as "invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge"). The defendant's motion to dismiss this claim is therefore **denied**.

## IV.

In the event that her claims were dismissed, the plaintiff has requested leave to amend. With respect to the plaintiff's claims pursuant to the NYSHRL and the NYCHRL, the plaintiff's claims are dismissed **without prejudice** for lack of subject matter jurisdiction, but leave to amend is **denied** as to those claims because any amendment would be futile. See Williams, 916 F. Supp. 2d at 524. However, the plaintiff's claims under Title VII arising from her 2014-2015 employment are dismissed **without prejudice**, and the plaintiff is **granted** leave to amend to explain, if possible, why such claims are viable and not barred by the statute of limitations. If the plaintiff chooses to file an amended complaint, the plaintiff may also plead facts relating to the November 2018 failure to hire.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit.

For the foregoing reasons, the defendant's motion to dismiss is **granted in part** and **denied in part.** The Clerk of Court is directed to close Docket No. 24.

Should the plaintiff seek to file an amended complaint, she must do so by **March 16, 2022.**


**SO ORDERED.**

Dated:     **New York, New York**
           **February 22, 2022**

                                       _____
                                       **John G. Koeltl**
                                       **United States District Judge**

17